Hearing Date: May 5, 2015 at 2:00 p.m.

ARENT FOX LLP
George P. Angelich
David Wynn
Eric Roman
George V. Utlik
1675 Broadway
New York, NY 10019
(212) 484-3900

*Counsel for the Plaintiff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>VIVARO CORPORATION, *et al.*,<br><br>　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 12-13810 (MG)<br><br>(Jointly Administered) |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF VIVARO CORPORATION, *et al.*,<br><br>　　　　　　　　Plaintiff.<br><br>　　　　　v.<br><br>LEUCADIA NATIONAL CORPORATION, BALDWIN ENTERPRISES, INC., BEI PREPAID, LLC, BEI PREPAID HOLDINGS, LLC, PHLCORP, INC., IAN CUMMING, JOSEPH STEINBERG, DAVID LARSEN, ST FINANCE LLC, SAMER TAWFIK, AND DOES 1 - 12,<br><br>　　　　　　　　Defendants. | Adversary Proceeding No. 14-02213 (MG) |

AFDOCS/12037926.4

**PRELIMINARY REPLY TO OBJECTION TO THE JOINT MOTION OF
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND THE
DEBTORS FOR AN ORDER APPROVING THE SETTLEMENT AGREEMENT
WITH LEUCADIA NATIONAL CORPORATION AND RELATED PARTIES
UNDER RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

The Official Committee of Unsecured Creditors (the "Committee" or "Plaintiff") of the above-captioned debtors and debtors in possession, Vivaro Corporation ("Vivaro"); STi Prepaid, LLC ("STi Prepaid"); Kare Distribution, Inc.; STi Telecom, Inc.; TNW Corporation; STi CC 1, LLC; and STi CC 2, LLC (collectively, the "Debtors"), and the Debtors, through their respective undersigned counsel, file this preliminary reply (the "Reply") to the objection (the "Objection") filed by Marcatel Com, S.A. de C.V. ("Marcatel"), Gusma Properties, LP, Gusma Investment, LP, Progress International, LLC, Unifica Contact Media S.A. de C.V. (collectively, the "Objecting Creditors"), Gustavo M. de la Garza Ortega ("Don Gustavo"), Gustavo M. de la Garza Flores, and Roberto Margain (the "Directors," together with the Objecting Creditors, the "Objecting Parties") to the Joint Motion Of the Committee and the Debtors For An Order Approving the Settlement Agreement With Leucadia National Corporation and Related Parties under Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Settlement Motion").[1]

This is a preliminary reply. The Committee reserves the right to submit a supplemental reply that outlines in detail the claims contemplated against the insiders and addresses other issues related to the Settlement Motion and the Objection.

In support of the Reply, the Committee respectfully states as follows:

**I.    PRELIMINARY STATEMENT**

1.    In light of the Objection, late last Friday, the parties started a settlement dialogue to address the Objection and to fold into those discussions a complete settlement of certain

---

[1] All terms shall have the same meaning as set forth in the Settlement Motion, unless otherwise defined herein.

AFDOCS/12037926.4

claims that these estates have against insiders. Some aspects of those settlement negotiations have already been underway for some time. Both before and after the Objection was filed, the Committee has had substantive settlement discussions with the Objecting Parties in an effort to resolve claims unrelated to the Leucadia lawsuit – namely, insider preference claims and directors' and officers' claims that were authorized to be filed in August 2014.

2. The Objection completely blind-sided the estates' professionals. We believe that the insiders are linking approval of the Leucadia settlement to prompt resolution of the insider preference claims and the directors' and officers' claims. Therefore, we will attempt to fast-track a framework for settling or addressing these issues. In light of recent discussions, it could take approximately two (2) weeks to see the initial results of those preliminary settlement discussions. The Committee has asked for consensual mediation and suggested that the insiders consider the following two candidates to serve as mediators: Hon. Arthur J. Gonzalez (C.J., Ret.), and Hon. Allan L. Gropper (Ret.) – or, if neither is available, another mediator of similar qualifications.

3. Although we hope that those discussions succeed, in the meanwhile, the Objecting Parties seek to derail an $8 million settlement between the Plaintiff and the Defendants. The Objecting Parties' personal attacks against the Committee and its counsel are counterproductive, damaging, and impede progress towards a global resolution of these cases. Regrettably, we must allocate some of this Reply to the incendiary tactics of the insiders. More importantly however, the toxic allegations are wholly irrelevant to the merits of the Settlement Motion for which the Committee and the Debtors jointly seek approval.

4. The standard for determining whether a settlement should be approved is whether, as a whole, it is fair and equitable and falls above the lowest point of reasonableness. The Committee's decision to enter into the settlement took into account, among other things, the

amount to be received from Leucadia measured against the risks posed by the Defendants' defenses, the likely expense and complexity of expert discovery, and the necessity of taking extensive non-party discovery. The proposed $8 million settlement between the Committee and the Defendants meets the standard of reasonableness accepted in this circuit. Rejection or delay of the settlement with the Leucadia-related parties will only result in greater administrative expense to these estates.

5. As set forth in detail in the Settlement Motion and the Declarations of Eric Roman, B. Lee Fletcher, and William Lenhart, the Committee respectfully submits that it is in the best interests of the Debtors' estates to approve the settlement with the Defendants.

## II. ARGUMENT

### A. The Court Should Approve the Settlement With the Leucadia Defendants

#### 1. The Settlement Is Reasonable and Is In the Best Interests of the Estates

6. As explained in the Settlement Motion, the Roman Declaration, the Lenhart Declaration, and the Fletcher Declaration, the proposed settlement is reasonable and in the best interests of the Debtors' estates in view of the risks posed by the Defendants' defenses (including a potential statute of limitations defense against the $37 million of STi Transfers) as well as the discovery hurdles that must be overcome to prevail on the merits (including the expense and complexity of expert discovery relating to the issue of insolvency and the extensive non-party discovery required).

7. The Committee's analysis in this regard is ignored by the Objecting Parties. Instead, the Objecting Parties argue, without any support or citation to authority, that the proposed settlement is *per se* unreasonable because the litigation has not yet moved beyond the

pleadings stage to discovery.² They also make conclusory assertions (supported by nothing more than attorney argument), that fact and expert discovery would not be expensive *at all* and that the Defendants' defenses (including its statute of limitations defense) are unlikely to succeed. None of these unsupported and speculative assertions overcome the reasonableness of the proposed $8 million settlement.

**2.    The Committee Has Authority to Settle On Behalf of These Estates**

8.      The Court's standing order, which was entered on August 25, 2014 (the "Standing Order," ECF No. 552), specifically states that the Committee is "authorized and empowered, and will have the sole and exclusive right and standing to assert, prosecute, **and settle**, by litigation or otherwise, as an independent representative of the Debtors' estates and for the benefit of the Debtors' estates and their creditors" any action, including the adversary proceeding against the Defendants. *See* Standing Order at ¶ 1 (emphasis supplied). The Standing Order makes clear that the Committee has authority to enter into a settlement with the Defendants.

9.      The Objecting Parties also question the Committee's right to obtain and grant releases. However, virtually no complex dispute can be settled without providing the paying parties releases. Otherwise the paying party does not receive peace and closure for its payment. Obviously, if the right and authority to settle litigation exists, the authority to negotiate and grant releases of claims to the extent permitted by law relating to that litigation must also exist. Any other interpretation is inconsistent with the Standing Order.

10.     The Objecting Parties suggest that neither the Committee nor the Debtors have the authority to release claims that Plaintiff's affiliates, owners, shareholders and members would have against the Defendants. However, any theoretical claims these parties might have against

---

² Following the Objecting Parties' logic, there can be no reasonable settlement of the Committee's contemplated claims against the directors and officers for breach of fiduciary duty, or any preference claim against insiders or non-insiders, unless fact discovery has been completed.

the Defendants would be derivative of the estates' claims and would thus constitute property of these estates. In addition, all such potential claims are also likely time barred, in which case no prejudice would result from the releases. In any event, to our knowledge, no such claims exist.

### B. The Objecting Parties' *Ad Hominem* Attacks On the Committee Are Irrelevant and Without Legal or Factual Foundation

11. The Objecting Parties engage in personal and *ad hominem* attacks that are not made under oath. They should be rejected.

#### 1. Arent Fox Does Not Have A Conflict of Interest With Respect to Leucadia Or the Other Defendants

12. In June 2013, Arent Fox promptly disclosed, in accordance with Bankruptcy Rule 2014, that Leucadia was a "former client." *See* ECF No. 414. In paragraph 44 of the Objection, the Objecting Parties state without any factual basis that Committee counsel, has or had an attorney-client relationship with Leucadia which was not only a conflict of interest but resulted in a "sweetheart deal" to end the adversary proceeding against the Leucadia-related Defendants. This is a sweeping and desperate departure from the facts. A twelve (12) year old former attorney client relationship is immaterial to the question of whether the settlement should be approved.

#### 2. There Is No Evidence That the Committee Is Engaged In "Self-Dealing"

13. The Objecting Parties also make pernicious and baseless assertions of lack of objectivity and "self-dealing" by the Committee.

14. In support of this contention, they cite the Debtors' decision not to pursue preference actions against Wind Telecom for gross transfers of $1.1 million. This allegation of "self-dealing" is irrelevant and misleading for at least two reasons. First, any activity relating to Wind Telecom is immaterial to whether the proposed Leucadia settlement is in the best interests

of the estates. Second, the value of the potential preference action was investigated by the Debtors' professionals and determined to be subject to a complete defense of new value. The decision not to pursue Wind Telecom was made by the Debtors themselves. The Committee standing is limited to pursuing individuals and entities specified in the Standing Order. The Committee was not vested with general authority to pursue all preference claims.

### 3. Payments to the Professionals

15. There is no merit to the suggestion that the Settlement is designed only to foster payments to the estate professionals. As the Objecting Parties well know, estate professionals are only paid if their fees are approved as appropriate. Further, a review of the estates' records shows that as of the present time non-professional administrative claimants have been paid 94.3% of their claims, while professionals have been paid only 52.1% of their fees.

### III. CONCLUSION

16. For the reasons set forth above and in the Settlement Motion and supporting declarations, the Committee respectfully requests that the Court deny the Objection in its entirety and enter an order approving the Settlement Agreement.

Dated:   New York, New York       *Counsel for the Plaintiff*
        May 4, 2015

        ARENT FOX LLP

        By:   */s/ George P. Angelich*
              George P. Angelich
              David Wynn
              Eric Roman
              George V. Utlik
              1675 Broadway
              New York, NY 10019
              (212) 484-3900