**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re:                                                    :    **FOR PUBLICATION**
                                          :
VIVARO CORPORATION, *et al.*,            :    Chapter 11
                                          :
                Debtors.            :    Case No. 12-13810 (MG)
                                          :
                                          :    (Jointly Administered)
                                          :

---------------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER SUSTAINING DEBTORS' OBJECTIONS TO THE CLAIMS OF BREEZECOM FZC, CALL MY WAY NY S.A., SMARTBOX EQIUPMENT, SAMITEL LIMITED, TELECAM/IP NETWORK OF THE AMERICAS INC., AMERICATEL PERU, S.A., WORLDWIDE TELECOM XCHANGE CARRIER FZ LLC, AND MAXCOM TELECOMINICACIONES S.A.B. DE C.V.**

*A P P E A R A N C E S :*

COZEN O'CONNOR
*Attorneys for Debtors and*
*Debtors-in-Possession*
277 Park Avenue
New York, NY 10172
By:    Frederick E. Schmidt, Esq.

LAW OFFICE OF GABRIEL DEL VIRGINIA
*Attorney for Debtors and*
*Debtors-in-Possession*
30 Wall Street
12th Floor
New York, NY 10005
By:    Gabriel Del Virginia, Esq.

ARENT FOX LLP
*Attorney for the Official*
*Committee of Unsecured Creditors*
1675 Broadway
New York, NY 10019
By:    George Angelich, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court are objections to claims (each a "Claim," and collectively the "Claims") filed by Vivaro Corporation, STi Prepaid, LLC, Kare Distribution INc., STi Telecom, Inc., TNW Corporation, STi CC I, LLC, and STi CC II, LLC (collectively the "Debtors"). The Debtors filed objections to the Claims (each an "Objection" and collectively the "Objections") of Breezecom FZC ("Breezecom," and when referencing the Objection, the "Breezecom Objection")(ECF Doc. # 736), Call My Way NY S.A. ("Call My Way," and when referencing the Objection, the "Call My Way Objection") (ECF Doc. # 737), Smartbox Equipment ("Smartbox," and when referencing the Objection, the "Smartbox Objection") (ECF Doc. # 738), Samitel Limited("Samitel," and when referencing the Objection, the "Samitel Objection") (ECF Doc. # 739), Telecam/IP Network of the Americas Inc. ("Telecam/IP," and when referencing the Objection, the "Telecam/IP Objection") (ECF Doc. # 740), Americatel Peru, S.A. ("Americatel Peru," and when referencing the Objection, the "Americatel Peru Objection") (ECF Doc. # 741), Worldwide Telecom Xchange Carrier FZ LLC ("Worldwide Telecom," and when referencing the Objection, the "Worldwide Telecom Objection") (ECF Doc. # 742), and Maxcom Telecominicaciones S.A.B. De C.V ("Maxcom," and when referencing the Objection, the "Maxcom Objection") (ECF Doc. # 745) (each a "Claimant" and collectively the "Claimants," and together with the Debtors, the "Parties"). Each of the Claimants is alleged to be a foreign entity without a business address within the United States. The Debtors' Objections are unopposed and are supported by the *Declaration of the Philip Gund, the Chief Restructuring Officer of Vivaro Corporation in Support of the Debtors' Objections to Claims based on 11 U.S.C. §502(d)* (the "Gund Declaration," ECF Doc. # 758).

The Debtors seek to have the Claims disallowed and expunged under section 502(d) of the "Bankruptcy Code" because each Claimant received a preference payment avoidable under section 547 and has not returned the amount for which the Claimant is liable under section 550. For the reasons explained below, the Objections are **SUSTAINED** and the Claims are **DISALLOWED** and **EXPUNGED**.

## I.    <u>BACKGROUND</u>

Section 502(d) of the Bankruptcy Code prevents an entity in possession of property of a bankruptcy estate, or that received an avoidable transfer from a debtor, from receiving any further distribution from the estate on a claim filed in such a bankruptcy case, unless the entity first turns over the property or repays the avoidable transfer.  A request for disallowance under section 502(d) may be joined as a cause of action by the estate or its representative in an adversary proceeding to recover the property or the avoidable transfer.[1]  Alternatively, if the estate or its representative seeks no affirmative recovery, section 502(d) may be asserted as a claim objection seeking to disallow or expunge the entity's claim.[2]

If a section 502(d) cause of action is included in an adversary complaint, the case proceeds in the normal manner for any adversary proceeding.  Service of the summons and complaint must be made under Rule 7004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  For defendants domiciled in the United States, Rule 7004 usually permits service of the summons and complaint by U.S. Mail, an easy and inexpensive process.  In an

---

[1]     Because the pending claim objections involve only claims filed by alleged recipients of avoidable preferential transfers, this Opinion focuses on section 502(d) objections to claims of recipients of preference payments.

[2]     Before the 2007 amendment to Rule 3007, some courts permitted the debtor to seek to recover preference payments in a claim objection, concluding that the prayer for damages converted the claim objection into an adversary proceeding.  *See In re Metiom, Inc.,* 301 B.R. 634 (Bankr. S.D.N.Y. 2003).  The rule was amended to add what is now Rule 3007(b): "A party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding."  FED. R. BANKR. P. 3007(b).  *See also In re MF Global Inc.,* 531 B.R. 424, 430 (Bankr. S.D.N.Y. 2015).

adversary proceeding against a foreign defendant, unless the defendant waives service of

process, the summons and complaint must be served under Rule 4(f) of the Federal Rules of

Civil Procedure (the "FRCP"); this process may require service under the Hague Convention on

the Service Abroad of Judicial and Extrajudicial Documents, or under another international

agreement such as the Inter-American Service Convention and Additional Protocol.  Service of

process on foreign defendants can be time-consuming and expensive, requiring translation of the

summons and complaint into the foreign language of the country in which service is to be

effected.

       A decision by the estate or the estate representative to file a claim objection rather than an

adversary proceeding to recover an avoidable transfer may be a rational economic decision.

Litigating a claim objection may be less expensive.  The time required and the cost of

prosecuting an adversary proceeding could easily exceed the amount of any judgment obtained.

And judgments against foreign defendants that do not have property in the United States may be

difficult to enforce.  Procedures applicable to claims objections are often more streamlined, and

disallowing and expunging a claim against the estate may provide greater net value to the estate

than obtaining an unenforceable or uncollectable judgment.  Subject to the applicable statute of

limitations, prosecuting a claim objection under section 502(d) of the Bankruptcy Code also does

not bar the estate or its representative from later filing an adversary proceeding to obtain a

judgment in the amount of an avoidable transfer.

       A decision by a creditor not to respond to a claim objection may also be a rational

economic decision.  Here, the claim objections were filed against foreign entities, each of which

would be required to retain an attorney if it decides to oppose the objection.  This may be

expensive.  Where the likely dividend to unsecured creditors is small, the cost of defending a

claim objection could easily exceed the amount the entity could ultimately recover on its claim. If the entity repaid the avoidable transfer, it would be entitled to receive an allowed claim "the same as if such claim had arisen before the date of the filing of the petition." 11 U.S.C. § 502(h). But, again, if the percentage of the likely dividend is small, this allowed claim would be of little comfort to the entity that had received the preferential transfer, particularly if the estate has not filed (and is not likely to do so) an adversary proceeding to recover the preferential transfer.

Two issues are raised by the claim objections pending before the Court. First, may a claim objection against a foreign entity that allegedly received an avoidable transfer be served by U.S. Mail under Bankruptcy Rule 3007, as was done here, or must it be served in the same manner required for service of a summons and complaint under Rule 4(f) of the FRCP? Second, when a claim objection is based on section 502(d), what must the estate or estate representative establish about the receipt of an avoidable transfer before the court will disallow and expunge the claim?

While case law is not uniform whether a claim objection may be served by U.S. Mail, the Court concludes, consistent with the weight of authority, that Bankruptcy Rule 3007 applies to claim objections and permits service by U.S. Mail—including service by mail on foreign entities as was done in this case.

When a claim objection is filed to disallow and expunge a claim based on section 502(d), it is not enough for the estate or estate representative to simply allege the entity received an avoidable transfer. A judicial determination that the entity received an avoidable transfer is required to disallow and expunge the claim. When that determination is made, the entity must be given a reasonable opportunity to repay the avoidable transfer. Here, the Claimants were given reasonable notice of the Objections and of the hearing, and failed to respond or appear at the

hearing.  Section 502(j) of the Bankruptcy Code allows a claim that has been disallowed to be reconsidered for cause.  Therefore, the Court will disallow and expunge the claims, recognizing that the Claimants may seek reconsideration under section 502(j) within a reasonable time.[3]

If the entity disputes receiving an avoidable transfer, or disputes the amount of the avoidable transfer, the Court will be required to resolve those issues.  This does not necessarily require the same determination that would be made before a damages judgment for an amount certain can be entered under section 550 of the Bankruptcy Code since no affirmative recovery can be awarded on a claim objection.  The Court may only need to determine that the entity received a preference in some amount that has not been repaid to the estate; section 502(d) requires that the entire claim be disallowed unless the full amount of the avoidable transfer has repaid.  If there are disputed issues raised by a claim objection and response, the matter proceeds as a contested matter under Bankruptcy Rule 9014.  The procedures applicable to contested matters are more flexible than litigating an adversary proceeding.

None of the Claimants filed a response to the Objections.  Before sustaining the objections and disallowing and expunging the claims based on section 502(d), the Court must be satisfied that the estate or estate representative has established a prima facie basis that the Claimants received and have not repaid avoidable transfers.  This standard is satisfied here.

A.    **Chapter 11 Cases**

On September 5, 2012 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") (ECF Doc. # 1).  The Chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).  On October 3, 2012, the Office of the United States Trustee (the "US Trustee") appointed an official

---

[3]      Should the estate or estate representative later decide to refile an adversary proceeding against a Claimant whose claim has been disallowed under section 502(d), seeking to recover the alleged preference payment, the Court would certainly entertain a motion to reconsider the Order disallowing the claim.

committee of unsecured creditors (the "Committee").  By order dated January 21, 2013 (the

"Sale Order," ECF Doc. # 288), the Court approved the sale of substantially all of the Debtors'

assets to Next Angel, LLC (the "Purchaser").  On February 8, 2012, the sale transaction closed.

On August 25, 2014, the Court approved a stipulation authorizing the Committee to pursue

preference claims.  The Debtors are currently liquidating assets that were not sold to the

Purchaser, including collection actions and fraudulent conveyance and preference claims.

### B.        Schedules and Proofs of Claim

The Debtors filed their schedules on November 30, 2012, pursuant to section 521 of the

Bankruptcy Code (ECF Docs. # 150 and 153).  These schedules were amended on December 13,

2012 (ECF Docs. # 169 and 170).  The Court entered an order on December 28, 2012 (ECF Doc.

# 197), establishing the last date for filing proofs of claim (each a "Proof of Claim") for general

claims as February 1, 2013, and for governmental units as March 4, 2013.  On April 25, 2013,

the Court entered an order (ECF Doc. # 390) establishing June 10, 2013, as the bar date for

postpetition administrative expense claims incurred from the Petition Date through February 7,

2013.  Approximately 607 Proofs of Claim for prepetition claims and 164 Proofs of Claim for

administrative expenses were filed.  Combined with scheduled claims, more than 1,150 claims

are pending against the Debtors.  On January 15, 2014, the Court entered an order approving

claims objection procedures and schedule amendment procedures, authorizing the Debtors to file

omnibus objections of up to 125 claims at a time on certain enumerated grounds other than those

set forth in Bankruptcy Rule 3007 (ECF Doc. # 476).

### C.        Notice of Objection and Adversary Proceedings

Each Claim addressed in the Objections was timely filed.  Adversary proceedings were

brought against the Claimants to clawback preferential transfers made by the Debtors during the

90-day period preceding the Petition Date (the "Preference Period").  The Complaints were not

served as required under Rule 7004.  After granting Debtors several extensions of time to serve

the Complaints, the Court entered an order on May 6, 2015 in each of the adversary proceedings

granting the Debtors one last 60-day extension of time to serve the Complaints, and providing

that the Court would *sua sponte* dismiss the Complaints if service was not completed by July 6,

2015.[4]  The Debtors did not serve the Complaints.  While orders were not entered dismissing the

Complaints after July 6, 2015, such orders are being entered today based on the failure to serve

the Complaints.

The Objections to the Claims were served by first class mail on each of the Claimants on

June 3, 2015 at the address set forth in the Debtors' schedules or listed on each Claimant's Proof

of Claim.  *See* Affidavit of Service (the "Affidavit," ECF Doc. # 747).  The Notice of Objection

served on each Claimant attached a copy of the Debtors' Complaint.  The Complaints and the

Gund Declaration informed each Claimant that they were in receipt of an avoidable Preference

Transfer (as defined herein) and, among other things, provided the standard for a preference

payment under section 547 of the Bankruptcy Code ("Preference Transfer") and provided the

Claimant with the Debtors' evidence—in the form of an itemized list of payments made by the

Debtors during the Preference Period.

### 1.    *Claim of Breezecom FZC*

Breezecom FZC filed a proof of claim for $73,039.96 (Claim # 116).  On September 2,

2014, the Debtors filed an adversary proceeding against Breeze Com FZC (*sic*) seeking a

---

[4]    The May 6, 2015 Order was entered in each of these adversary proceedings:  *See* Breezecom (Adv. Case No. 14-02175, ECF Doc. # 8); Call My Way (Adv. Case No. 14-02210, ECF Doc. # 8); Smart Box (Adv. Case No. 14-02193, ECF Doc. # 7); Samitel (Adv. Case No. 14-02166, ECF Doc. # 7); Telecam IP (Adv. Case No. 14-02135, ECF Doc. 8); Worldwide Telecom (Adv. Case No. 14-02149, ECF Doc. # 8); and Maxcom (Adv. Case No. 14-02157, ECF Doc. # 7).

recovery of $41,824.82 for payments made during the Preference Period.  The Affidavit lists

Claimant Breezecom as having an address in Karachi, Pakistan.  (Aff. Ex. B.)

2.    *Claim of Call My Way*

Call My Way NY S.A. had a scheduled claim for $20,234.83 (Call My Way Obj. Ex. A).

On September 4, 2014, the Debtors filed an adversary proceeding against Call My Way N.Y. S.A

(*sic*) seeking a recovery of $6,766.62 for payments made during the Preference Period.  The Call

My Way Objection states in relevant part that the "Claimant is a foreign entity with a last known

address in San Jose, Costa Rica." (Call My Way Obj. at 7.)

3.    *Claim of Smartbox*

Smartbox Equipment filed a proof of claim for $9,189.33 (Claim # 37).  On September 3,

2014, the Debtors filed an adversary proceeding against Smart Box Equipment (*sic*) seeking a

recovery of $20,025.64 for payments made during the Preference Period.  The Smartbox

Objection states in relevant part that,

> The Claimant is a Canadian entity which designated on its proof of
> claim a former Vivaro Corporation address in Houston, Texas, as
> the address where notices should be sent.  The Claimant designated
> an address in Westmount, Quebec, Canada, as the address where
> payments should be sent and the Debtors have provided notice . . .
> to the address designated as the payment address.

(Smartbox Obj. at 7.)

4.    *Claim of Samitel*

Samitel Limited had a scheduled claim for $159,355.84 (Samitel Obj. Ex. A).  On

September 1, 2014, the Debtors filed an adversary proceeding against Samitel Ltd. (*sic*) seeking

a recovery of $66,224.63 for payments made during the Preference Period.  The Samitel

Objection states in relevant part, "Claimant is a foreign entity with a last known address in

London, United Kingdom."  (Samitel Obj. at 7.)

5.    *Claim of Telecam/IP*

Telecam/IP Network of the Americas Inc. had a schedule claim for $151,716.48.  A Proof of Claim was also filed in the amount of $151,593.62 (Telecam/IP Obj. Ex. A).  On August 31, 2014, the Debtors filed an adversary proceeding against Telecam seeking a recovery of $519,593.62 for payments made during the Preference Period.  The Telecam/IP Objection states in relevant part that, "Claimant is a foreign entity which designated on its proof of claim an address in San Salvador, El Salvador as the address where notices should be sent."  (Telecam/IP Obj. at 7.)

6.    *Claim of Americatel Peru*

Americatel Peru, S.A. had a scheduled claim for $132,902 (Americatel Peru Obj. Ex. A). On September 2, 2014, the Debtors filed an adversary proceeding against American Peru seeking a recovery of $45,349 for payments made during the Preference Period.  The Americatel Peru Objection states in relevant part "Claimant is a foreign entity with a last known address in Lima, Peru."  (Americatel Peru Obj. at 7.)

7.    *Claim of Worldwide Telecom*

Worldwide Telecom Xchange Carrier FZ LLC had a schedule claim for $355,550.85 (Obj. Ex. A).  On September 1, 2014, the Debtors filed an adversary proceeding against Worldwide Telecom Exchange Carrier seeking a recovery of $171,097.43 for payments made during the Preference Period.  The Worldwide Telecom Objection states in relevant part "Claimant is a foreign entity with a last known address in Dubai, United Arab Emirates." (Worldwide Telecom Obj. at 7.)

8.    *Claim of Maxcom*

Maxcom Telecomunicaciones SA, a/k/a Maxcom Telecomunicaciones S.A.B. de C.V.,

had a schedule claim for $626,882.56.  A Proof of Claim was also filed in the amount of

$43,483.37 (Maxcom Obj. Ex. A, Claim 757).  On September 1, 2014 the Debtors filed an

adversary proceeding against Maxcom Telecommunicaciones seeking a recovery of $125,000 for

payments made during the Preference Period.  The Maxcom Objection states in relevant part that

"Claimant is a foreign entity which filed an administrative proof of claim upon which it

designated an address in Santa Fe, Mexico as the address where notices should be sent."

(Maxcom Obj. at 7.)

## II.    DISCUSSION

### A.    Service of the Objection on Foreign Claimants by U.S. Mail Was Proper

Generally, notice must be "reasonably calculated, under all the circumstances, to apprise

interested parties of the pendency of the action and afford them an opportunity to present their

objections."  *Mullane v. Central Hanover Bank & Tr, Co.*, 339 U.S. 306, 314 (1950).  Notice of

claims objections, including objections to claims by foreign claimants, are governed by Rule

3007, which provides that "[a] copy of the objection with notice of the hearing thereon shall be

mailed or otherwise delivered to the claimant, the debtor or debtor in possession, and the trustee

at least 30 days prior to the hearing."  FED. R. BANKR. P. 3007(a).  On the other hand, under ule

7004, the standard for service of a summons and complaint upon an individual in a foreign

country is governed by FRCP Rule 4(f)(1), made applicable to adversary proceedings by Rule

7004(a).  FED. R. BANKR. P. 7004(a).  Unless the defendant waives service of process, service

must be "by any internationally agreed means reasonably calculated to give notice, such as those

means authorized by the Hague Convention . . . ."  FED. R. CIV. P. 4(f)(1).

The Second Circuit has not addressed whether Rule 7004 or Rule 3007 applies to service
of claims objections.  Lower courts in other circuits have split on this issue, although more recent
and persuasive authority has applied Rule 3007 authorizing service of claim objections by mail.
Courts applying Rule 7004 start their analysis by examining Rule 9014, the rule governing
contested matters.  Rule 9014(a) provides that "[i]n a contested matter not otherwise governed by
these rules, relief shall be requested by a motion . . . ."  FED. R. BANKR. P. 9014(a).  Rule 9014(b)
provides that the motion "shall be served in the manner provided for the service of a summons
and complaint by Rule 7004 . . . ."  FED. R. BANKR. P. 9014(b).  A claim objection initiates a
contested matter, but the question then becomes, whether a claim objection is "a contested matter
not otherwise governed by these rules . . . ?"  Put differently, is service of the claim objection
"otherwise governed by these rules?"  Rule 3007(a) specifically applies to claim objections and
provides that "[a] copy of the objection *shall be mailed* or otherwise delivered to the claimant,
the debtor or debtor in possession, and the trustee at least 30 days prior to the hearing."  FED. R.
BANKR. P. 3007(a) (emphasis added).  Courts that have concluded that service of claim
objections by mail is sufficient focus on the quoted language of Rule 3007.  *See Summit City
Limits, LLC v. AMF Bowling Worldwide, Inc. (In re AMF Bowling Worldwide, Inc.)*, No. 12-
36495, 2013 WL 5575470 at *4 (Bankr. E.D. Va. Oct 9, 2013) ("Rule 3007 of the Federal Rules
of Bankruptcy Procedure is the rule that pertains to claims objections, and it is this rule that
applies as far as service of an objection to a proof of claim is concerned."); *In re Wilkinson*, 457
B.R. 530, 548 (Bankr. W.D. Tex. 2011) ("This court is inclined to agree with those cases that
have found that service of a claim objection is 'otherwise governed by these rules'—in other
words, because service is governed by Rule 3007, Rule 9014 (and thus Rule 7004) does not
apply."); *In re Franchi*, 451 B.R. 604, 607 (Bankr. S.D. Fla. 2011) ("The specific language of

Rule 9014 exempts an objection to claim from the requirement of service in accordance with Rule 7004."); *In re Anderson*, 330 B.R. 180 (Bankr. S.D. Tex. 2005) ("[T]his Court holds that the better analysis leads to the conclusion that mailing as required by Rule 3007 constitutes sufficient and proper service, and that service under Rule 7004 is not required."); *In re Pamela Hawthorne*, 326 B.R. 1, 2 (Bankr. D.D.C. 2005) (concluding that "[m]ailing as required by Rule 3007 . . . constitute[s] proper service"); *see also* 9 COLLIER ON BANKRUPTCY ¶ 502.05[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014) ("Since Rule 3007 is the specific rule concerning objections to claims, it controls service of such an objection rather than the more general Rule 9014(b).").

Other courts have held that Rules 9014 and 7004 govern the method of service required for claims objections. *United States v. Levoy (In re Levoy)*, 182 B.R. 827, 834 (9th Cir. B.A.P 1995) (holding that Rule 9014 applies to objections to claims). In *Levoy*, the court determined that Rule 3007 does not provide the manner for service of the objection to a proof of claim because such a claim involves a "contested matter" that is governed by Rule 9014, which in turn makes applicable the provisions of Rule 7004. *Id.*; *see also In re Lomas Fin. Corp.*, 212 B.R. 46, 52–53 (Bankr. D. Del. 1997) (citing *In re Levoy*, 182 B.R at 834) ("[A]s a bankruptcy appellate panel has recently noted, Rule 3007 does not provide the manner for service of the objection to a proof of claim.").

Most telling, however, in 2005, the Ninth Circuit Bankruptcy Appellate Panel that decided *Levoy* in 1995, rejected that court's earlier conclusion that Rule 7004 applies to service of claims objections. *See Jorgenson v. State Line Hotel, Inc. (In re State Line Hotel, Inc.)*, 323 B.R. 703, 713 (9th Cir. B.A.P. 2005). Distinguishing *Levoy*, the court in *Jorgenson* concluded that "Rule 9014 defers to Rule 3007 on the subject of claims objections: [Rule 3007] calls for an

objection, not a motion, and authorizes notice, rather than requiring service." *Id.* According to

the court in *Jorgenson*, that court's previous analysis in *Levoy* was not based on a thorough

analysis of the structure of Rules 3007 and 9014. *Id.* *Levoy* failed to consider the "not otherwise

governed" provision in Rule 9014(a) (then Rule 9014). Therefore, the court in *Jorgenson*

concluded that it was not bound by *stare decisis* to follow *Levoy*—the the statement in *Levoy*

regarding Rules 3007, 7004, and 9014 was "made casually and without analysis." *Id.* at 713–14

(citing *United States v. Johnson*, 256 F.3d 895, 915–16 (9th Cir. 2001)). *Jorgenson* therefore

held that Rule 9014 does not dictate that claims objections conform to the service requirements

of Rule 7004. *Id.* Under Rule 3007, mailing or otherwise delivering a copy of the objection with

a notice of hearing to the domestic or foreign claimant is sufficient. *Id.* at 711.

The Court agrees with *Jorgenson* and the other cases that have held that Rule 3007

governs service of claims objections and that service by mail is sufficient. While none of the

earlier cases dealt with claims filed by foreign entities, there is no reason for requiring a different

rule for service of claims objections on foreign entities so long as the estate or estate

representative establishes that service by mail was made on the creditor. It would be anomalous

if a foreign creditor could file a proof of claim by mail, obtain the benefit of a presumption of

validity and amount of a properly prepared proof of claim, but then ham-string the estate or

estate representative when it serves its claim objection by mail to the address the creditor

supplied in its proof of claim (or the last known address of the claimant if the debtor scheduled

the claim).

In these cases, the Debtors' established that the Objections were properly served by mail

on each of the Claimants. Therefore, the Court proceeds to examine whether the Debtors have

made the necessary showing that each of the Claimants received an avoidable preference that has

not been repaid so that the claims should be disallowed and expunged under section 502(d) of the

Bankruptcy Code.

### B.    Disallowance of Claims

#### 1.    *Preference Payments under Sections 547 and 550 of the Bankruptcy Code*

Debtors brought adversary proceedings pursuant to section 547 of the Bankruptcy Code

seeking to avoid preferential transfers.  Each Complaint identifies each transfer and sets forth the

necessary requirements to avoid a transfer under section 547(b) of the Bankruptcy Code: the

transfers were "(i) to or for the benefit of a creditor; (ii) for or on account of an antecedent debt

owed by the debtor before such transfer was made; (iii) made while the debtor was insolvent; (iv)

made (A) on or within 90 days before the date of the filing of the petition; . . . and (v) that

enable[d] such creditor to receive more than such creditor would receive if (A) the case were a

case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor

received payment of such debt to the extent provided by the provisions of this title."  11 U.S.C. §

547(b).  While the Complaints were not served under Rule 7004, copies of the Complaints and

the Gund Declaration were included with the Objections and provided the Claimants with notice

and evidence of the avoidable transfers.

The Court is satisfied that the Complaints and the Gund Declaration, copies of which

were provided to the Claimants with the Objections, set forth the necessary and sufficient

evidence to make a prima facie showing that the Preference Transfers are avoidable preferences

under section 547 of the Bankruptcy Code.  The service of the Debtors' Objections shifted the

burden to the Claimants to rebut the evidence that they received an avoidable preference, or,

absent that, to provide notice that the value of the Preference Transfer will be returned to the

Debtors' estate.  None of the Claimants filed a response to the Objections, none of the Claimants

returned the amount of the Preference Transfer back to the estate.[5]  For those reasons, the Court finds that the Debtors met their burden under section 547, and have demonstrated that each of the Claimants received an avoidable transfer and failed to repay the amount of the transfers to the estate.

> 2.    *Claims Objection under Section 502(d) of the Bankruptcy Code*

Since the Court has concluded that the Claimants have an outstanding obligation to Debtors' estate in the amount of the Preference Transfers, the Court now turns to whether their claims can be disallowed under section 502(d) of the Bankruptcy Code.

Correctly filed proofs of claim "constitute [] prima facie evidence of the validity [and amount] of the claim.  To overcome this prima facie evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim."  *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000) (internal citations omitted).  By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed."  *Creamer v. Motors Liquidation Co. GUC Tr. (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted).  If the objector does not "introduce [] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim." 4 COLLIER ON BANKRUPTCY ¶ 502.02.

Section 502(d) of the Bankruptcy Code provides in relevant part:

---

[5]      The elements of a preferential transfer claim are straight-forward and it usually is not difficult for the estate to establish a prima facie basis for the claim.  Factual and legal disputes more frequently arise from the affirmative defenses in section 547(c).  Since no responses to the Objections were filed, no issues under section 547(c) need to be addressed.

> [T]he court shall disallow any claim of any entity from which
> property is recoverable under section [550] of this title, unless such
> entity . . . has . . . paid the amount . . . for which such entity . . . is
> liable . . . .

11 U.S.C. § 502(d).[6]

The purpose of section 502(d) of the Bankruptcy Code is to prevent entities, which hold

property subject to turnover or avoidance, from receiving a distribution of estate assets until such

property is first returned to the estate.  *See In re Mid Atl. Fund, Inc.*, 60 B.R. 604, 609 (Bankr.

S.D.N.Y. 1986).  This statute is a claims avoidance provision that requires bankruptcy courts to

disallow claims to the extent that a creditor violates provisions of the Bankruptcy Code regarding

voidable preferences and turnover actions.  *Chapman v. Charles Schwab & Co. (In re Chapman)*,

269 B.R. 201, 207 (Bankr. N.D. Ill. 2001) (citing section 502(d) of the Bankruptcy Code);

*accord Seta Corp. of Boca, Inc. v. Atl. Comput. Sys. (In re Atl. Comput. Sys.)*, 173 B.R. 858, 861

(S.D.N.Y. 1994); *see also* 4 COLLIER ON BANKRUPTCY ¶ 502.05[1] ("Section 502(d) is operative:

(1) when the trustee has secured an order to the claimant for a turnover of property under

sections 542 and 543; (2) when the trustee, having successfully avoided transfers under the

sections dealing with the trustee's avoidance powers, may proceed under section 550; (3) when a

set-off has been found avoidable and the amount of the property thus set-off is recoverable to the

estate.").

Section 502(d) serves the policy goal of ensuring compliance with judicial orders.  4

COLLIER ON BANKRUPTCY ¶ 502.05[1] (citing *Campbell v. United States (In re Davis)*, 889 F.2d

658, 661(5th Cir. 1989)); *accord Enron Corp. v. Springfield Assocs., LLC. (In re Enron Corp.)*,

379 B.R. 425, 435 (S.D.N.Y. 2007).  However, section 502(d) is not intended to have a punitive

effect.  *In re Davis*, 889 F.2d at 661–63 (holding that section 502(d) is "designed to be triggered

---

[6]      Section 502(d) also applies to claims held by transferees of avoidable transfers.  *See* 4 COLLIER ON
BANKRUPTCY ¶ 502.02.

after a creditor has been afforded a reasonable time in which to turn over amounts adjudicated to belong to the bankruptcy estate," and that section 502(d) does not seek to penalize a claimant by voiding a claim before the expiration of a reasonable time after final determination of liability).

As touched upon in the policy discussion in *In re Davis*, a claim should not be disallowed pursuant to section 502(d) without first determining whether the claimant is liable to the estate. *See In re Davis*, 889 F.2d at 662; *In re Atl. Comput. Sys.*, 173 B.R. at 862 (finding that section 502(d) requires "some sort of determination of the claimant's liability before its claims are disallowed"); s*ee also In re S. Air Transp., Inc.*, 294 B.R. 293, 297 (Bankr. S.D. Ohio 2003) ("When raising an objection to a claim based upon the ground that claimant has failed to surrender the alleged voidable transfer, the claim can neither be allowed nor disallowed until the preference matter is adjudicated." (citations and internal quotation marks omitted)).  If the debtor alleges a voidable transfer, the claim may be immediately or temporarily disallowed pursuant to section 502(d); however, to prevent abuse of section 502(d)'s disallowance mechanism, such initial disallowance should be made by judicial determination and should be subject to judicial reconsideration.  *See* 4 COLLIER ON BANKRUPTCY ¶ 502.05[2][a] ("Another concern is whether a claim may be disallowed under section 502(d) simply upon the assertion of the trustee as to the avoidability of a transfer to the holder of the claim or whether the trustee must have an actual 'avoidance' judgment against the holder.  To assure the effectuation of the purpose of this section, the claim may be disallowed at least temporarily and for certain purposes, subject to reconsideration, simply upon the allegation of an avoidable transfer.  But to prevent abuse of this section this initial disallowance should be made by judicial determination, whether it be obtained in a claim objection or by some form of a declaratory judgment action.").

Once a claimant's liability has been determined, the claimant must be provided with a reasonable opportunity to turn over the property to the debtor's estate in compliance with section 502(d) before the claims may be disallowed. *In re Atl. Comput. Sys.*, 173 B.R. at 862; s*ee also In re Davis*, 889 F.2d at 662 (holding that "the creditor is still entitled to a reasonable time after the final determination [of the creditor's liability] until [the claims voidance provisions of] Section 502(d) [are] kicked into effect"). In *Davis*, the court did not define what a "reasonable opportunity" to comply would be; the court did, however, indicate that a court that orders a turnover in one instant and in the same instant disallows a creditor's claim for failing to comply with that order has not offered the creditor a reasonable opportunity to comply before dismissing its claims. *In re Davis*, 889 F.2d at 662.

But if the creditor is liable to the estate for having received an avoidable transfer *in any amount*, the creditor's entire pending claim must be disallowed in full. *See* 4 COLLIER ON BANKRUPTCY, ¶ 502.05[1] ("Section 502(d) of the Bankruptcy Code requires disallowance of a claim of a transferee of a voidable transfer *in toto* if the transferee has not paid the amount of turned over the property received as required under the sections under which the transferee's liability arises.").

Here, the Debtors have shown that the Claimants owe the estate funds equal to the amount of their respective Preference Transfers. The Claimants have had ample opportunity to return the value of the Preference Transfers to the Debtors and have failed to do so. None of the Claimants has complied with its obligation under sections 547 and 550 of the Bankruptcy Code. While the pending Claims are disallowed and expunged, the Claimants may seek reconsideration of this Order pursuant to section 502(j) within a reasonable time.

### III.    CONCLUSION

For all of the foregoing reasons, each of the Objections are **SUSTAINED** and the Claims

are **DISALLOWED** and **EXPUNGED** pursuant to section 502(d) of the Bankruptcy Code

subject to reconsideration under section 502(j).

**IT IS SO ORDERED.**

Dated:  November 13, 2015
          New York, New York

_____*Martin Glenn*_____
MARTIN GLENN
United States Bankruptcy Judge